**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
--------------------------------------------------------
SHIVA STEIN,                                :
                                            :
             Plaintiff,                     :   Civil Action No. 22-cv-3703
                                            :
v.                                          :   COMPLAINT FOR VIOLATIONS OF
                                            :   SECTIONS 14(a) AND 20(a) OF THE
HEALTHCARE TRUST OF AMERICA,                :   SECURITIES EXCHANGE ACT OF
INC., W. BRADLEY BLAIR, II, VICKI U.        :   1934
BOOTH, H. LEE COOPER, WARREN D.             :
FIX, JAY P. LEUPP, RESHMA BLOCK, and        :   JURY TRIAL DEMANDED
CONSTANCE B. MOORE,                         :
                                            :
             Defendants.                    :
--------------------------------------------------------    :
```

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.     This is an action brought by Plaintiff against Healthcare Trust of America, Inc. ("Healthcare Trust or the "Company") and the members Healthcare Trust's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of Healthcare Trust by affiliates of Healthcare Realty Trust Incorporated ("Healthcare Realty").

2.     Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on May 2, 2022 with the United States Securities and Exchange

Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby the HR Acquisition 2, LLC ("Merger Sub"), a wholly-owned subsidiary of Healthcare Trust, will merge with and into Healthcare Realty with Healthcare Realty surviving as a wholly-owned subsidiary of Healthcare Realty (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on February 28, 2022 (the "Merger Agreement"), each Healthcare Trust stockholder will receive a total implied value of $35.08 per share comprised of a special cash dividend of $4.82 per share owned and a transaction exchange ratio of 1:1 based on Healthcare Realty's unaffected stock price of $30.26 on February 24, 2022 (the "Merger Consideration").

1.      As discussed below, Defendants have asked Healthcare Trust's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, J.P. Morgan Securities LLC ("J.P. Morgan") in support of its fairness opinion.

2.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

3.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Healthcare Trust's stockholders or, in the

event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

5.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

6.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the Company trades on the New York Stock Exchange, headquartered in this District, and the closing of the Proposed Transaction will take place in this District.

## PARTIES

7.      Plaintiff is, and has been at all relevant times, the owner of Healthcare Trust stocks and has held such stocks since prior to the wrongs complained of herein.

8.      Individual Defendant W. Bradley Blair, II has served as a member of the Board since September 2006 and is the Chairman of the Board.

9.      Individual Defendant Vicki U. Booth has served as a member of the Board since March 2018.

10.     Individual Defendant H. Lee Cooper has served as a member of the Board since January 2020.

11.     Individual Defendant Warren D. Fix has served as a member of the Board since September 2006.

12.     Individual Defendant Jay P. Leupp has served as a member of the Board since January 2020.

13.     Individual Defendant Reshma Block has served as a member of the Board since March 2022.

14.     Individual Defendant Constance B. Moore has served as a member of the Board since March 2022.

15.     Defendant Healthcare Trust is a Maryland corporation and maintains its principal offices at 16435 N. Scottsdale Road, Suite 320, Scottsdale, AZ 85254.  The Company's stock trades on the New York Stock Exchange under the symbol "HTA."

16.     The defendants identified in paragraphs 10-14 are collectively referred to as the "Individual Defendants" or the "Board."

17.     The defendants identified in paragraphs 10-15 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.     The Proposed Transaction

18.     Healthcare Trust is the largest dedicated owner and operator of MOBs in the United States, comprising approximately 25.1 million square feet of GLA, with $7.4 billion invested primarily in MOBs. Healthcare Trust provides real estate infrastructure for the integrated delivery of healthcare services in highly-desirable locations. Investments are targeted to build critical mass in 20 to 25 leading gateway markets that generally have leading university and medical institutions, which translates to superior demographics, high-quality graduates, intellectual talent and job growth. The strategic markets Healthcare Trust invests in support a strong, long-term demand for

4

quality medical office space. Healthcare Trust utilizes an integrated asset management platform consisting of on-site leasing, property management, engineering and building services, and development capabilities to create complete, state of the art facilities in each market. This drives efficiencies, strong tenant and health system relationships, and strategic partnerships that result in high levels of tenant retention, rental growth and long-term value creation. Headquartered in Scottsdale, Arizona, Healthcare Trust has developed a national brand with dedicated relationships at the local level. Founded in 2006 and listed on the New York Stock Exchange in 2012, Healthcare Trust has produced attractive returns for its stockholders that have outperformed the US REIT index.

19.     On February 28, 2022, the Company and Healthcare Realty jointly announced the Proposed Transaction:

> NASHVILLE, Tenn. and SCOTTSDALE, Ariz., Feb. 28, 2022 (GLOBE NEWSWIRE) -- Healthcare Realty Trust Incorporated (NYSE:HR) ("Healthcare Realty" or "HR") and Healthcare Trust of America, Inc. (NYSE: HTA) ("Healthcare Trust of America" or "HTA") today announced that they have agreed to enter into a strategic business combination. HTA shareholders will receive a total implied value of $35.08 per share comprised of a special cash dividend of $4.82 per share and a transaction exchange ratio of 1:1 based on HR's unaffected price of $30.26 on February 24, 2022. This transaction brings together two of the largest owners of medical office buildings, creating the preeminent, pure-play medical office building REIT and positions the combined company (the "Company") to create long-term shareholder value. The Company will have a pro forma equity market capitalization of approximately $11.6 billion and a total enterprise value of $17.6 billion based on the implied values at market close on February 24, 2022.
>
> **Leadership and Organization**
>
> The Company will be led by the Healthcare Realty management team, with Todd Meredith as President and Chief Executive Officer and Kris Douglas as Executive Vice President and Chief Financial Officer. Upon completion of the transaction, the new Company will

continue to operate with the Healthcare Realty name and trade on the NYSE under the ticker symbol HR.

The Company will have a highly qualified, diverse Board of Directors comprised of nine existing directors of Healthcare Realty, three members of the Healthcare Trust of America Board, and one new member to be mutually agreed upon by the existing HR and HTA directors and appointed prior to closing of the transaction. Knox Singleton, Chairman of the Healthcare Realty Board, will be Chairman of the Company and Brad Blair, Chairman of the Healthcare Trust of America Board, will be appointed Vice Chairman.

Upon completion of the transaction, the Company's headquarters will be based in Nashville, with additional corporate offices in Scottsdale and Charleston. The Company will implement a detailed integration process to ensure continuity for tenants, employees and all stakeholders.

"We are pleased to announce this strategic transaction, which unites two highly complementary medical office portfolios and represents a rare opportunity to create a sector-leading REIT in terms of both size and quality. We believe all shareholders will benefit from the Company's expanded national footprint from HR's Seattle portfolio to HTA's Boston portfolio. The Company will have unmatched market scale in concentrated clusters, meaningful corporate and operational synergies, and a larger development pipeline. We believe this transaction will be accretive through near term synergies with additional value from operational upside. It will also strengthen the combined balance sheet, enhance liquidity and improve access to capital. This combination provides a significant value creation opportunity for shareholders," stated Todd Meredith, President and Chief Executive Officer, Healthcare Realty.

"This transformative transaction joins two premier real estate companies with a combined value that we believe is much greater than the sum of its parts, with the operational and financial scale necessary to compete and drive sustainable value creation. HTA shareholders will realize an attractive premium via a special cash dividend while being able to fully participate in the future growth prospects of a powerful, sector leading MOB REIT, led by a seasoned, well-respected management team. This transaction is the culmination of a thorough strategic review process and we are pleased with the result for our shareholders, employees and tenants. We are confident this is the best path forward for HTA," stated Brad Blair, Chairman of the Board, Healthcare Trust of America.

**Key Benefits**

The combination of Healthcare Realty and Healthcare Trust of America is expected to result in significant strategic, operational and financial benefits to shareholders, including:

- **Creates Preeminent, High Quality MOB REIT:** With 727 properties totaling 44 million square feet, the Company will be the largest pure-play MOB REIT, with nearly double the square footage of the next largest MOB portfolio. The Company will own the largest portfolio of on or adjacent to hospital campus properties comprising 28.2 million square feet. 94% of the portfolio's square feet will be in top 100 MSAs.

- **Achieves Critical Scale with Enhanced Clusters:** The Company will own over 1 million square feet in 14 distinct markets, representing over 50% of the portfolio's square feet. Nearly 80% of the portfolio's square footage will be located in markets with over 500,000 square feet. Meaningful scale in markets drives operational efficiencies for tenants and incremental leasing and investment volumes. Across the entire portfolio, the Company will have 147 clusters, each comprised of two to eleven properties within two miles of each other and averaging approximately 195,000 square feet per cluster.

- **Broadens Relationships and Portfolio Diversification:** The portfolio will include properties associated with 57 of the Top 100 health systems in the U.S. on or adjacent to 231 hospital campuses. The top 10 tenants in the portfolio will represent 22.6% of the portfolio's square feet with no single tenant representing more than 5.2%.

- **Expands Development Pipeline:** The Company will have an embedded development pipeline in excess of $2 billion, concentrated in high growth markets such as Seattle, Houston, Denver, Dallas and Raleigh.

- **Material Cost Synergies:** The Company expects to realize annual run rate cost synergies of $33 – 36 million within 12 months of closing from the elimination of duplicative corporate and public company costs.

- **Accretive with Operational Upside:** The transaction is expected to be accretive to Healthcare Realty's per share results assuming full realization of synergies. Longer term, the Company expects to benefit from enhanced leasing volumes to drive occupancy and rent growth across the portfolio as well as property level cost savings.

- **Greater Access to Capital and Balance Sheet Strength:** The Company intends to maintain a flexible, investment grade-rated balance sheet with a well staggered debt maturity profile. With enhanced size and scale, the Company expects to benefit from greater liquidity, higher index weightings and reduced borrowing costs over time.

**Transaction Structure**

At closing, each share of HR common stock will be exchanged for one share of HTA common stock, at a fixed ratio. In addition, a special cash dividend of $4.82 per share will be distributed to HTA shareholders. Taken together and based on HR's share price at the close of markets on February 24, 2022, HTA shareholders will realize an implied value of $35.08 per HTA share, representing an 18.2% premium to HTA's share price at the close of markets on February 24, 2022. This combination is structured as a reverse merger whereby Healthcare Trust of America will be the corporate successor and the Company's name will continue as Healthcare Realty Trust Incorporated. Pro forma for the transaction HR and HTA shareholders will own 39% and 61% of the Company, respectively.

The special cash dividend of approximately $1.1 billion will be financed through joint venture transactions and asset sales. JPMorgan Chase Bank, N.A. has provided a commitment letter to Healthcare Trust of America for a $1.7 billion debt financing for the transaction upon the terms and conditions set forth in the letter.

The transaction is expected to close in the third quarter of 2022, subject to customary closing conditions, including the approval of both Healthcare Realty and Healthcare Trust of America shareholders. The transaction was unanimously approved by the Board of Directors of HR and the Board of Directors of HTA.

**Advisors**

Citigroup Global Markets Inc. is serving as lead financial advisor, Scotiabank is serving as financial advisor, and Hunton Andrews Kurth LLP is acting as legal advisor to Healthcare Realty. J.P. Morgan Securities LLC is acting as exclusive financial advisor and McDermott Will & Emery LLP is acting as legal advisor to Healthcare Trust of America.

\* \* \*

20.     The Board has unanimously agreed to the Proposed Transaction.  It is therefore imperative that Healthcare Trust's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.      The Materially Incomplete and Misleading Proxy Statement**

21.     On May 2, 2022, Healthcare Trust filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

22.     The Proxy Statement fails to provide material information concerning financial projections by Healthcare Trust management and relied upon by J.P. Morgan in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and J.P. Morgan with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Healthcare Trust management provided to the Board and the Financial Advisors. Courts have uniformly stated that "projections … are probably

among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

23.     For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Net Operating Income, EBITDA. Funds from Operations, Funds Available for Distribution, FFO/Share, FAD/Share, and Unlevered Free Cash Flow, but fails to provide line items used to calculate the metrics and/or a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

24.     When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

25.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the

residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

26.     Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

27.     With respect to J.P. Morgan's *Public Trading Multiples* analysis, the Proxy Statement fails to disclose the financial metrics and multiples for each company selected for the analysis.

28.     With respect to J.P. Morgan's *Precedent Transaction Multiples Analysis*, the Proxy Statement fails to disclose the financial metrics and multiples for each transaction selected for the analysis.

29.     With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the range of terminal values for Healthcare Trust and Healthcare Realty; (ii) the inputs and assumptions underlying the use of perpetual growth rates of 2.25% to 2.75%; (iii) the inputs and assumptions underlying the use of the range of discount rates of 6.65% to 7.15%; (iv) the Company's and Healthcare Realty's weighted average cost of capital; and (v) net debt of the Company and Healthcare Realty as of December 31, 2021

30.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

31.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

32.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

33.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

34.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed

12

to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

35.      Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

36.      The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

37.      Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38.      The Individual Defendants acted as controlling persons of Healthcare Trust within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Healthcare Trust, and participation in and/or awareness of the Company's

operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Healthcare Trust, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

39.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

40.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Healthcare Trust, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

41.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.   The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

42.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

43.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

44.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

### RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.     Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: May 6, 2022                      **MELWANI & CHAN LLP**

By:    */s/ Gloria Kui Melwani*
           Gloria Kui Melwani
           1180 Avenue of the Americas, 8th Fl.
           New York, NY 10036
           Telephone: (212) 382-4620
           Email: gloria@melwanichan.com

           *Attorneys for Plaintiff*